So, Mr. Barron, are we referring to SIPs? Is that what we call them? Yes, sir. Okay. I'm afraid we've got a lot of acronyms in this business. I'm sure do. May it please the Court, David Barron for Petitioners, Safe Air For Everyone, American Lung Association of Idaho, and Noel Sturgeon. In this case, we challenge EPA's failure to assess the air quality impacts of allowing the burning of thousands of acres of cropland in Idaho each year. The smoke from this burning, as we've heard, is so thick that it sends people to the hospital, triggers dangerous asthma attacks in children, and in some cases has been blamed for actual deaths. But in 2005, EPA approved a revision to the Idaho State Implementation Plan, or SIP, under the Clean Air Act, allowing this burning, and it did so without even looking at the air quality impacts. That action violated Section 110L of the Clean Air Act, which bars EPA from approving any plan revision if the revision would interfere with any applicable Clean Air Act requirement, including attainment of standards and other requirements. Obviously, the EPA said this wasn't a revision. It was a clarification. Now, I assume your position is that that's that was arbitrary appreciation. Well, Your Honor, whatever they – first of all, they called this a SIP revision. That's what the Federal Register notice is called. I understand, but they say that they weren't doing anything that would trigger a new substantive review. Rather, it was clarifying that Idaho, since the 1970s, has – the State of Idaho, which is responsible for submitting SIPs and all that stuff, has obviously intended to allow this kind of burning through a series of its own acts. That's what they say, Your Honor. And we contend that's not only wrong, that there was a very real change here. And number two, even if it wasn't a relaxation of what was going on, this Court's decision in Hall v. EPA still requires a clean air impact analysis. Well, maybe I'm not posing my question very clearly. I think Hall is different. It may – I mean, it certainly supports your point of view, but, I mean, it's different in that the revision – the last look was years removed from the action that was taken. It was plainly a revision, and it was done in order, as I remember, to deal with a new standard. So Hall is sort of different here, if I've got it right. The prior SIPs, 1999, I think, and 2003, expressly permitted burning. Then it – or I've got it backwards. Up until then, burning was explicitly permitted in the SIPs, and then there were two SIPs in a row which were silent on the issue, and therefore, inferentially, by the plain language of the SIP, would have prevented it. And then you've got the 2005 one. But during that period, the State of Idaho had various pieces of legislation in its own smoke management plan acts that clearly manifested the State's intention to allow burning. So, I mean, you've got to have all that in the mix. And hence the question, why was it improper, wrong? You say, why was it wrong, why was it arbitrary and capricious for the agency to say, look, it's always been this way. We're not doing anything new, novel, or different. Well, Your Honor, I guess I have to disagree with the characterization that the preexisting SIP was silent on this issue. The preexisting SIP, approved by EPA in 1993 and re-approved in 2003, prohibited any open burning except in ten listed categories, none of which included crop residue disposal. Rather than give an argument myself, I was trying to pinpoint it down to the question which I've got. And the question is quite pointed, and that is why, in your view, which I assume is your view, EPA could not clarify the fact that even though its own SIPs did not allow for open crop residue burning, the State of Idaho's responsibility it is to submit SIPs in the first place, obviously intended throughout that entire period to allow it, because its own legislation did. Well, Your Honor, if they intended to allow it under the conditions of the preexisting Idaho laws governing smoke burning, they never submitted those laws as part of the federally enforceable SIP. So even if you assume that Idaho allowed burning under those preexisting laws, those laws never became part of the federally approved SIP. And that's what the issue was in Hall, not what the State might have wanted to do under its own laws, but what the federal law on its face, the federal plan, required. And here it plainly did not allow burning after the 1993 SIP approval. Moreover, even if you accept that the preexisting law silently incorporated all of those laws you're mentioning, Your Honor, that allowed burning in 1985 and 1986, the 2005 revision we're challenging here relaxes those laws, too. The 2005 revision allows burning under the 2003 Smoke Management Act, which for the first time exempts crop residue burning from longstanding Idaho prohibitions on the opacity or density of smoke and from nuisance law restrictions. So even if we look at just Idaho law, the 2004 or 2005 revision is a relaxation. But I want to go back to Your Honor's suggestion that they can escape the decision in Hall simply by calling this change a clarification. A clarification, Your Honor, is where somebody's fixing an ambiguous term or correcting a typographical error. Is that your question? I understand everything about this case, maybe, except Hall. What does Hall do for you? The statute itself, as interpreted, has a non-relaxation provision. If it's a relaxation, you win. If it's not a relaxation, you seem to say that there's another thing that Hall does, even if it's not a relaxation. So I have two questions. A, does Hall matter to the relaxation point? And B, if there is no relaxation, can you explain to me what Hall then does if there's no relaxation? Why, Hall, what? What does Hall accomplish if there isn't relaxation? If there is not a relaxation. Well, in fact, Your Honor, those were the facts of Hall. The facts in Hall were that EPA submitted a SIP revision for Las Vegas and claimed that it didn't have to do a clean air analysis because it didn't relax preexisting SIP. So why do you keep referring to Hall with regard to the relaxation issue? Well, because it's the same standard, and I guess the point is that even if there's no relaxation, Hall still requires an air quality analysis. And if the question is, Your Honor, why do we even need to talk about relaxation, whether there's relaxation or not, given that Hall says you have to do an air quality analysis even if there is no relaxation, the answer is we probably don't. Hall would still require a clean air analysis. The only reason that we're spending, that we spent some time talking about this is because that was EPA's sole reason, sole stated reason for skipping the air quality analysis here. Their sole stated reason was that there was no relaxation. And, in fact, there was. But if there was relaxation, isn't that a substantive problem? Do you still go through the air quality issue? I mean, is that a substantive standard that says you just don't do it? You have to do it in both situations, Your Honor. There's no question about that. There's no question about that. Well, if there's a relaxation, then you have to do an air quality standard. And maybe you can still make the change if you do it. EPA can still make the change. That's true in both cases. In both cases, if the analysis shows, and this is Hall's holding, if the analysis shows that the revision is consistent with a plan that meets current air quality requirements, that the plan as revised will assure compliance with current air quality requirements, then EPA can approve that. And part of the problem, of course, is that there was an amendment in betwixt and between the times when, in Hall, there had been an approval and there was another sip. I mean, and that had a lot to do with this Court's analysis of why Hall couldn't or why the EPA couldn't just say there was no relaxation. Well, Your Honor, the fact, you're referring to the fact that there was an amendment to the 1990 Clean Air Act amendments. Yes. But that was only one fact that went into Hall's decision. Hall says that it's EPA's most basic responsibility in reviewing clean air plan revisions to determine whether the plan as revised will be consistent with meeting clean air standards. This is not just something you do, you know, when you feel like it. This is the central inquiry whenever EPA ---- Well, it's actually, you know, there's some, well, if they change a comma to a semicolon, I mean, I mean, that goes through the whole thing. Sure, Your Honor, I agree with that, of course. All right. So we're ---- If it was a technical change, you know, a correcting a comma, a spelling mistake, this is not what we're talking about here. They added an entirely new section, and they incorporated a State law that had never been incorporated before that relaxed preexisting requirements. Okay. The State law that they incorporated that relaxed was what? The 2003 Smoke Management Act, which exempted crop residue ---- which exempted crop residue burning from nuisance law, from trespass law, and from restrictions on the opacity and density of smoke. And that was not in the law at the time of the preexisting SIP provision, which was approved in 93 by EPA. Now, even if ---- I'm sorry. Did you have another question? No. I'm not sure I ---- I'm not sure I quite get it, but go ahead. Even ---- even aside from these attainment requirements, EPA violated Section 110L for another reason by failing to evaluate the impacts of this plan revision on other applicable requirements of the Act, namely the requirements to prevent excessive interstate air pollution and to protect visibility. It's undisputed that crop residue burning generates smoke that goes across state lines and that this burning causes visibility impairment. There's a photograph in our brief showing this. And the Act requires each plan, each implementation plan, to prevent that kind of pollution, or at least has certain limits on that kind of pollution. EPA didn't even look at that here. They didn't even address how all this burning would affect the applicable requirements that the Idaho SIP prevent visibility impairment and excessive interstate air pollution. And this is not even a non-relaxation issue here because Idaho had no pre ---- has no preexisting implementation plan to address the applicable requirements that are now. And Your Honor talked about things that have changed since the last approval. Well, between 1993 and now, EPA promulgated a new PM standard, the PM 2.5 standard, and it adopted rules on visibility protection in parks and wilderness areas, which did not exist at the time that EPA approved the 1993 SIP. So there was an important change. And there's something else here too. One of the reasons that Hall was so emphatic in saying that non-relaxation is not enough to assure compliance with air quality standards is because in that case, Las Vegas continued to be designated non-attainment for the particulate matter standard, which is the relevant one here, despite the preexisting SIP. So there was no necessary connection between not relaxing the SIP and ensuring attainment of standards. The same ---- But what's odd about the phrasing of 110L is that it talks about interfering with the attainment. So it appears that the concern is not with advancing the attainment, but with not interfering with it, which is strange language. And that ---- Well, and ---- Go ahead. Well, and Hall answers that question, Your Honor, by treating it as an analytical requirement. It requires EPA to evaluate. The way Hall read this was based on the history of the Supreme Court decisions and the history of the Clean Air Act, which all focused on the importance of EPA ensuring that each plan revision would provide for attainment and ensure compliance with other applicable requirements. That's how Hall interpreted that interference language. Now, EPA's action here violated the Act for another reason, namely Section 193 of the Act, which bars relaxation of preexisting SIP, pre-1990 SIPs, when you revise a SIP after 1990. But before I get to that, let me just get back to this point about non-relaxation, one more point about it to hopefully not confuse you anymore. In Hall, as I said, the Court found that non-relaxation was ---- wasn't at all connected with ensuring attainment because the area was still violating standards, even under the non-relaxed SIP. And that's true here, too. Four Idaho areas are still violating or still designated non-attainment for the particulate matter standard despite the preexisting SIP. So non-relaxation of that preexisting SIP doesn't assure that those areas will be redesignated to attainment. Now, under Section 193, the pre-1990 SIP prohibited open burning that caused a density of greater than 20 percent. It's my understanding from looking at this that this argument was not raised in your comment. Which is the 193 argument? Yeah, that the pre didn't have nuisance and the argument you're just making now. Did you raise that in the comment? Your Honor, we did argue that Section 193 was violated by this revision. I understand that. You didn't make this. Did you make an argument that nuisance suits aren't allowed, blah, blah, blah? We did not specifically reference the opacity or the nuisance provisions. Then aren't those arguments waived? Well, Your Honor, exhaustion, which that would be the argument, that we didn't exhaust, that's an affirmative defense. And EPA didn't raise that. And if you don't raise an affirmative defense, it's waived. It's not exhaustion, really. I'm sorry? It's not precisely exhaustion if you don't raise the arguments during the notice and comment period. It's just waived. I don't believe there's any case law in this circuit that says you waive an argument that the statute does not require any sort of thing for this, any justice. Didn't the agency address a 193 argument in its response to the comments, at least in general? Yes. The agency addressed it and said that their entire response was that field burning has always been allowed in Idaho. So that's all we have to say. We don't have to look. We don't have to compare what was required under the pre-1990 SIP to what's required now. Are you also arguing that the 1982 Idaho 1982 SIP and the Idaho statute at the time seemed to have a necessity requirement and seemed, in particular, to not allow burning simply for disposal? Burning that what? Burning simply for disposal. And so the change in 86, they allowed burning earlier, but only under certain circumstances, and then in 86, they were allowing it all the time. That's correct. Is that your argument in addition to this other material? That's true, Your Honor. And the law of this circuit does not require us to raise every permutation of an argument. It's enough that we raise the issue, put it before the agency, and it's the agency's to look at the issue and decide whether the statute's being complied with or not. They didn't do that here. And they – furthermore, they have never said in any of their briefs that they're claiming we failed to raise this comment with enough specificity to give them an opportunity to respond. I see my time is up. Maybe I could get a few seconds for rebuttal. Thank you, Your Honor. Thank you, Mr. Barron. Mr. Serino. Good morning again, Your Honor. And may it please the Court, I'd like to recognize, in addition to Ms. Matthews, who remains at counsel table, Lisa Kronberg from the State of Idaho, which is an intervener in this proceeding. Ms. Serino, may I ask you the same question that I asked Mr. Barron, and that is, you know, the EPA said that it was simply clarifying, making a clarification of the law. And what gives you license to just up and do that? Well, EPA has the right to clarify its own regulations, and that's what it was doing, the regulation being the previous SIP, the previous State implementation plan, issued in 2003. Well, I mean, it's clear that the two, that the SIP, the plain meaning of the SIP is that crop residue burning was not allowed. I mean, that's the plain meaning, which I think you agree with. I mean, at least that's the way I read your brief. I mean, that would mean that you'd be reading the regulation outside the context of all the Idaho laws and what's actually happening in Idaho. But it is independent of the Idaho. If I can just pursue it just a second, so I'm understanding my problem, which I've now forgotten. Sorry. But I, I, there is, the SIP does not contain. Okay. Okay. What I think I heard you say was that the SIP, no matter what it says on its face, incorporates State law? No. No. The EPA may interpret its own regulations. Yes. In this one, there was a latent ambiguity. What was the ambiguity? Well, that the, in light of the Idaho legislature's approach to the issue, there was no specific statement in the SIP stating that crop residue burning was an allowed form of open burning. But everybody, including the State of Idaho, the EPA, the growers certainly, everybody knew that it was a legal activity in Idaho. But that's not the question. I mean, if Idaho had come in in 1993 with a provision that said this is legal in Idaho and we propose to make it part of the SIP, which I understand they never did, then the, there would have been comment on that, and it would have been a decision made by EPA whether to accept that or not, and it could have rejected it, right? Because it could have said, sorry, we don't want open burning, agricultural burning to be allowed. As far as we're concerned, you can't have a SIP like that. But that issue was never put to EPA, and EPA never approved it. And certainly nobody had a chance to comment on it. That's correct. I mean, that, right, that never happened. It's what the State of Idaho, that the State of Idaho law allowed it is completely irrelevant to whether it was in the SIP or wasn't in the SIP. EPA and the State of Idaho understood the SIP as allowing for crop residue disposal burning, despite the lack of a specific statement in the SIP, because everybody understood how the legislature had approached the issue by prohibiting the state agency that had jurisdiction over air pollution rules from regulating the activity of crop residue disposal burning. So with that in mind, it makes total sense. The only way I think for the petitioners to prevail is to establish that in interpreting its own regulations, and that's an area in which an agency is the agency has to only look at the words of a SIP. It can't interpret its own regulations by looking at state law. And here it was more than just legislative pronouncements. You had EPA working with the relevant state agencies on alternatives to open burning, agency giving money to the Idaho, or drives reservations to improve their programs. You had the summits with concerned citizens trying to find alternatives to this widely, widely practiced activity in Idaho. But you're basically saying that the agency can interpret A to mean, you know, A to mean B, because it says flat out that you can't have open burning except of certain kinds. So there's nothing ambiguous about it. And you're saying that the agency, nonetheless, can interpret it to mean something completely different from what it says. I don't believe it's completely different if you understand the context of the regulation of open burning and crop residue disposal burning in Idaho. I mean, this — I don't think you can just — you can preclude the agency from considering those sources. Again, if it's a latent ambiguity, the agency should be allowed to consider other evidence in interpreting the meaning of its own regulations. And I'd cite to you Al or V. Robbins for that proposition. If somebody in 1993 was looking at this document and said, shall I go in and challenge it or not, and they looked at this document and they said — I mean, as a proposed rule, and they said, well, this looks pretty good. It's actually banning agricultural burning. I'm not going to say anything, right? And now they're being told, well, that isn't true at all. All along it did say that, even though nobody would know it, looking at this document. Well, that person would have to know absolutely nothing about the activity in Idaho or the relevant laws in Idaho. Except that you're assuming that whatever Idaho is doing is what EPA has to approve, and that obviously is not the case. The whole point of the system is that EPA can disapprove what Idaho is doing. I don't follow you, Your Honor. What I'm saying is Idaho doesn't get to do whatever it wants to do by a SIP. The point of this whole SIP process is that it submits to EPA what it wants to do, and EPA can say, no, no, no, no, no, we don't want you to do that, right? So the fact that Idaho was doing it doesn't prove anything, because for all we know, they were doing it inconsistently with the SIP. That's what it looks like. Yeah, I think to conclude that EPA and the state of Idaho set up a system where this activity was legal on the ground in Idaho, but prohibited under the SIP, it's just, I just think that defies logic. And that's what they're saying happened. You'd have to buy into that for petitioners to win. It just doesn't make sense. I don't know that this case requires a broad general rule, but certainly under the facts of this case, and they're a little bit crazy, but if you understand the legislative history, the pronouncements by the officials in Idaho, I think it was well within EPA's authority to clarify this SIP to resolve this ambiguity. I'm having trouble with your use of the word clarify. The SIP listed certain kinds of burning that was permitted. It did not permit crop residue burning. And you've labeled that as a latent ambiguity. It seems to me that the plain meaning of the SIP is that only certain things can be burned. How do we, what's ambiguous? Well, because if you know anything about the practice in Idaho. I don't. I'm from Los Angeles. Okay. But there's an inconsistency with the laws in Idaho that is explained by the legislature's approach to this. And as it turned out. But aren't we construing the SIP? Yes. What's the ambiguity in the SIP? The silence on the point of whether crop residue disposal burning is an allowable form of activity is ambiguous. Does that silence mean that it's prohibited? Or does it mean that, you know, it had been precluded from being regulated by the agency who submits the SIP? It sounds like, to me in reading it, that it is prohibited since it's not included and other things are specifically included. Well, based on the history here, EPA concluded that there was an ambiguity. And all it did was clarify its understanding of the SIP provisions. And again, it's well within the agency's prerogative to do that. It's like Howard V. Robbins on that point. Do you have, does EPA have any authority, as it were, over Idaho once the Idaho legislature withdrew rulemaking regulatory authority from the Environmental Quality Department in Idaho to say, nevertheless, we're going to stick with our former SIP? I want to make sure I understood your question. It's convoluted. Okay. Idaho withdraws rulemaking authority from the Idaho Department of Environmental Quality, right? I believe so, yeah. Yeah. I mean, this is your explanation for why you needed a clarification. Okay. Is that the agency that submits the SIP couldn't do it, in effect, because the Idaho legislature said you can't. The agency that promulgated the air pollution rules was prohibited from regulating this activity. Yes, right? So given that situation, in the 19, what is it, 99 and 2003 SIPs, did EPA, could EPA have just said, regardless of that, we want to allow open burning, or we want to disallow it? Well, I know that the agency can't impose more stringent requirements than what the state requests, but what you're asking me is whether the agency could have disagreed with what the state wanted on this point? Yeah. I'd have to, I can't speak to that, Your Honor. Wouldn't the Supremacy Clause kick in here under the Safe Air Act? Well, there's a, I think the Bethlehem Steel stands for the proposition that EPA cannot impose more stringent requirements than what the state submits in a SIP. But it could disapprove the SIP. I believe so. So that's what it would do if it knew, if it knew that, the whole point is that the SIP is a federally approved allowance for the state to enforce rules. And if there isn't such a SIP, then the Federal government can impose its own rules under FIPS, right? That's right. Okay. But let me make one point, that we're talking here about the revisions that are applicable to just a part of the whole SIP for Idaho, and that there's another part of the SIP that involves standpoint in which the agency cited the Smoke Management and Crop Residue Disposal Act, which specifically allows for open burning. So you had a reference in the, in another part of the SIP that was issued years previously that referenced the legality of it. So it wouldn't make sense for EPA to have done that and then to have left in place portions of the SIP that prohibited the practice. It just wouldn't make sense. In fact, what EPA did in the 2005 revisions makes the whole SIP consistent. So the SIP is a plan for the State, and it was a group of regulations together that are found in one of the SIPs. So if Idaho changes its rules, let's suppose that at the time the SIP was approved, this did reflect the law of Idaho. If Idaho then changes its rule and starts doing something else inconsistent with the SIP, the agency is not required to allow that, right? I mean, the EPA is not. You can say either come back to what you said you were going to do in the SIP or we're going to vacate the SIP because you're not doing what you said you were going to do. Yes. I want to make sure I'm understanding what you're, the point you're making, which is that the terms of the SIP are binding on the State. Are binding on the State. They can't be amended without approval by EPA. So if they change the law of Idaho, it's their problem. They then have to go back to the Feds and say, you know, the Feds have changed the rules, and then the Feds get to say either, okay, that's fine with us, or no, it isn't fine with us, forget the SIP. Right. Here, though, here, though, the law didn't change. I understand that, but it wasn't submitted with the SIP, and it wasn't recognized in the SIP. But there's a reason why it wasn't. That makes perfect sense. It was well understood by all interested parties in Idaho. Again, it can't have been. But isn't there an EPA problem then? I mean, the agency is supposed to tell, announce a proposed rule and take comments on the rule, not on something that's in its head that's not in the rule. Well, and it did that. But it couldn't have. What happened in the 2005 SIP is, to clarify the ambiguity, it couldn't have been that this activity was legal in Idaho but prohibited by the SIP. Nobody intended that consequence. I would say one thing. There's not one document in the record that speaks to a prohibition under the SIP of this crop resident disposal burning. There's not one document in the record, other than their submission. Everything points in the direction that this was a well-known legal activity in Idaho that no one would have ever thought would have been prohibited by the SIP. Well, in 1980, just to talk a little bit about the 193 issue, you actually do not, in your brief, argue a waiver or lack of exhaustion issue with regard to it. Well, I will say this, that is absolutely correct. In the comment letter, what was presented to the agency was the topic of allowability alone. There's no analysis of opacity or mentions of nuisance. The question was, this wasn't allowable, and now you're making it allowable. But it actually wasn't allowable, or at least it was a lot less allowable in 1982, because in 1982, the Idaho law said that convenience of disposal is not of itself a valid necessity for burning and said that it has to be shown that such burning is necessary. That's somewhat different, enormously different, from saying do what you want. I mean, are you talking about what the ---- I'm talking about the 1982 Idaho statute, or 1972 maybe, and what was around at the time of 19 1990. The point was in their comment letter, what they presented only was, and if you read that section in the comment letter under 193, it really doesn't make a whole lot of sense. They don't even cite to the 1982 statute. They just raise the general idea of something was prohibited, and now it's not prohibited. So what I'm getting at is that's what you see a response to in the final rule. Ginsburg's saying that that's correct, that, in fact, the 1980 ---- what was incorporated in the 1982 SIF said convenience of disposal is not itself a valid necessity for burning. So that wasn't allowed, and now it is. But there are ---- these rules, if you want to ---- the EPA did not compare and contrast because that issue wasn't presented to the agency. That's what I'm trying to understand. You just said it wasn't presented. What was presented was that it wasn't allowed, and now it is. That's right, and EPA disagreed with that. Well, if you read their comment letter under 193, it's very confusing what the topic is. And that's why you see a summary response in the EPA's final rule. But the bottom line is, under 193, that there was no modification of any control requirement in effect in 1990, which is the 1982 SIF. Just a word on Hall. I think Hall doesn't fit this scenario well. Hall speaks to situations in which the agency is changing the air quality, air emissions. There's a relaxing of maybe one pollutant and a loosening of another, and there's a need for an analysis as to whether these changes result in compliance with the current standards. Here, EPA wasn't changing anything, so there was no need for an analysis. But I think for Hall to apply, there has to be a change in the air emission levels. I don't think it's proper to import the rule of Hall into the 193 context. That's a backwards-looking comparison for 193. You compare the rules in effect in 1990 with the changed SIF. Remember, Hall wants a comparison between the changed SIF and the national standards, so it doesn't fit to bring Hall into Section 193. Okay. I see my time is up. I respectfully request that the Court deny the petition for review. Thank you. All right. Thank you, counsel, both of you. The argument was helpful and we appreciate it. The matter just argued to be submitted.
judges: Alarcon, Rymer, Berzon